**People of the State of Illinois, Defendant in Error, v. Andrew Lee Hulet (Impleaded), Plaintiff in Error.**

**Gen. No. 50,090.**

First District, Fourth Division.

December 30, 1965.

Robert B. Jones, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE ENGLISH delivered the opinion of the court.

After a bench trial, defendant was convicted of burglary and sentenced to a term of two-to-four years. His codefendant, Young, was found not guilty. In this appeal defendant contends that the trial court erred in admitting into evidence his alleged confession; that there was no competent evidence of the corpus delicti in corroboration

of the alleged confession; and that the trial court erred in failing to consider testimony of the codefendant.

The record shows that defendant began drinking at the Hi-Fi Lounge at about 9:00 p. m. on March 21, 1963. Defendant testified that he drank gin, wine and beer, and that the total consumption was "over my normal, what I could drink." Defendant and an unidentified friend departed the Hi-Fi Lounge before midnight and went to a bar known as Sam's located at 24th and State Streets. While at Sam's, defendant and one or two friends consumed a half-pint of gin. Of subsequent occurrences defendant testified that the last thing he remembered prior to awakening in jail at 6:30 the next morning was a crowd of people and getting hit on the side of his head. Defendant stated that he was "very intoxicated" that night. In corroboration of this contention, A. D. Williams testified that he was with defendant at the Hi-Fi Lounge and that when defendant left the premises "he wasn't sober" but was "quite intoxicated."

Testimony of codefendant Young sheds some light on defendant's activity between midnight and 6:30 on the morning of March 22. Young testified that at about 9:00 p. m. he was in the Hi-Fi Lounge where he saw defendant but did not speak to him; that he (Young) left there before midnight and went to a bar located at 23rd and Cottage Grove, where he had a conversation with defendant and gave him money for a drink. Young further testified that he then went to the washroom and when he returned defendant was gone; that the bartender told him defendant had been ejected because of a fight. Young said that shortly thereafter he saw a crowd of people across the street at a General Tire store; that he saw defendant lying on the floor inside the store; that defendant appeared to be asleep; that he joined the crowd of people who were trying to attract defendant's attention so that defendant would leave the store. At this point of the direct examination of Young by his own

counsel, the trial judge called a short recess and inquired as to whether defendant Hulet's counsel wished to have certain parts of Young's testimony deleted from the record. Upon appropriate motion by defendant Hulet's counsel, the court then expunged the testimony of Young beginning with all questions and answers from the time he recited leaving the Hi-Fi Lounge. Subsequent to this recess, Young testified that while he was walking around the General Tire store, located at 2249 S. Cottage Grove, he observed a police car. The police arrested Young at the corner of 22nd Street and Prairie Avenue.

A more detailed explanation of what transpired in the early morning of March 22 was offered by witnesses for the State. Officer Gibson testified that, while on patrol with his partner, Green, at about 12:45 a. m., northbound on Cottage Grove Avenue near 23rd Street, they saw defendant fall to the floor in the brightly lit General Tire store; that immediately he and Green left their police car and went around to the Prairie Avenue side of the store; that as they rounded the corner they observed Young standing a few feet from the double door garage of the store where a window had been broken; that they arrested Young and entered the premises; that defendant was inside, standing up and holding his arms in the air in the process of surrendering. On further examination, Gibson stated that he observed another broken window leading from the garage part of the premises to the office; that there were three typewriters and three adding machines stacked on the tables and on the floor; that he then placed defendant under arrest and took both defendant and Young to an interrogation room at the First District Police Station. Officers Gibson, Rice, Sundstrom and Green were in the interrogation room with defendant and Young when, according to Gibson, defendant admitted that he had broken into the General Tire premises. On cross-examination, Gibson stated that in his opinion defendant was coherent at the time of his arrest.

197

Officer Sundstrom testified that he interrogated defendant and Young in the presence of Officers Rice, Gibson and Green; that defendant signed a statement or confession recording some questions and answers which had been made in the interrogation room and Young signed the document in the capacity of a witness. Sundstrom further testified that Young stated defendant had been drinking and had asked Young if he would want to burglarize the place across the street; that Young admitted he had acquiesced in the proposal and had stationed himself on the corner across the street from the General Tire store to watch for the police. On cross-examination, Sundstrom said that in his opinion defendant was "slightly intoxicated" at the police station.

Officer Rice testified that, upon interrogation, defendant admitted that he had decided to break into the premises; that defendant recounted how he had met Young at a tavern and asked him if he wanted to make some money; that Young's reply was that his rent was due and he needed $40 to pay it; that after some further conversation Young agreed to help him. Rice also testified that defendant's statement was reduced to writing and that after defendant read it he signed it. The statement, which was received in evidence, included the following questions and answers:

Q. What is your social security number?
A. 489 29 5700.
Q. At the time you obtained this number, where were you living?
A. 2910 S. Dearborn St., Chicago, Ill.
Q. What is the extent of your education?
A. Three years of high school.
Q. Do you read and write the English language?
A. Yes.
Q. Do you know where you are and why you are here?

■■■■■■■■

A. In jail at 11th and State and I'm here because a [sic] broke a window and went into the place. I went into.

Q. Are you willing to tell us about this incident?

A. Yes.

Q. Where were you on 22 March 1963 at about 12:30 A. M.?

A. I was drinking wine with Robert Young at corner of 23rd & Cottage Grove Ave. We drunk the wine. I threw the bottle away. I then asked Robert Young if he wanted to make some money. He said yes, and that he needed some money. Then I told him wait there and let me know if anything happened or anybody comes. I walked across the street to this tire place and went around to the rear. I broke the window in the garage door and climbed inside. I went looking for a cash register but couldn't find one. I broke into an office in the building by breaking a window between the office and the garage. I then stacked three typewriters next to this broken window. I then saw the police cruising past and I didn't have time to duck and they saw me. I raised my hands and surrendered.

Q. Where was Robert C. Young while you were in this building?

A. He was supposed to be out on the corner watching for the police.

Q. Where is this Robert Young at this time?

A. He is sitting here next to me.

Q. Had you been drinking before you broke into building?

A. Yes, sir.

Q. How much?

A. Quite a bit of wine and some gin.

Q. After you have read the foregoing statement, consisting of two pages and finding it to be the

truth, as you have stated, without any threats or promises, will you sign it?

A. Yes.

█ Defendant first contends that the trial court erred in admitting in evidence his confession because he was intoxicated at the time it was made and, further, because all material witnesses to the confession were not called at the trial. We can dispose of the latter point quickly. There is no claim that defendant's confession was involuntary because of having been induced by force, threats, or promises of leniency. Since the admissibility of the confession is not questioned on these grounds, no error may be predicated upon the failure to call at the trial all material witnesses to the confession. People v. Wright, 24 Ill2d 88, 92, 180 NE2d 689.

██ The point concerning intoxication requires a more extended discussion. A finding that the defendant's confession was involuntary would require reversal, regardless of the possibility that there might be other evidence sufficient in itself to support the judgment of conviction. Admission of the confession in such a case violates due process. Lynumn v. Illinois, 372 US 528, 537. But a claim of intoxication does not present such a case. A good statement concerning the admissibility of a confession made while allegedly under the influence of intoxicating liquor was expressed in People v. Townsend, 11 Ill2d 30, 42, 43, 141 NE2d 729 where the court was presented with the question of whether a defendant under the influence of drugs is capable of making a voluntary confession. The court approved the following language of State v. Wise, 19 NJ 59, 115 A2d 62 (1955):

Although there appear to be few reported cases involving the admissibility of confessions given while the defendant was under the influence of narcotics, we think it is apparent the same principles apply to this class of cases as have long been applied to con-

fessions made while under the influence of intoxicating liquor. In the latter class of cases, both the state and federal courts are in unanimous agreement that the intoxication of the accused at the time he confesses affects only the weight of the confession as evidence against himself. So long as the accused is capable of making a narrative of past events or of stating his own participation in the crime, his statements are admissible against him. (Citing cases.)

Defendant refers us to State v. Anderson, 247 Minn 469, 78 NW2d 320 (1956), where the accused contended successfully that his confession had been made while he was under the influence of intoxicating liquor. That case is of no aid to the instant defendant since there the record indicated that the accused was "in a drunken stupor" or "just out" at the time of the confession. The evidence here completely fails to establish that physical fact.

A better analogy is found in People v. Cox, 383 Ill 617, 622, 623, 50 NE2d 758, where the accused claimed that his confession should not have been admitted in evidence because he "had been intoxicated for some forty hours prior to that night and that by reason of his tired, dazed and worn condition, caused by such long period of intoxication, the confession could not be considered as having been made voluntarily." The court held that the confession was properly admitted in evidence and deemed it significant that (as in the case at bar) there was no contention that the confession was involuntarily procured by "force, intimidation or promise of immunity."

██ We should bear in mind also that the question of the voluntary nature of a confession is primarily for the trial court to determine and its decision will not be disturbed unless it is against the manifest weight of the evidence. People v. Lego, 32 Ill2d 76, 203 NE2d 875;

People v. Weger, 25 Ill2d 370, 185 NE2d 183; People v. Miller, 13 Ill2d 84, 148 NE2d 455.

While the record in the instant case indicates beyond question that defendant spent several hours drinking liquor at various bars prior to the offense, the testimony is minimal in support of defendant's claimed intoxication at the time of his oral and written confession. As bearing on his condition we have set forth a major part of his signed statement verbatim. It supports the trial court's conclusion since it contains a lucid and descriptive account of the events which precipitated his arrest. The ". . . clarity and accuracy [of the statement] negate any inference that defendant was confused, incapacitated or mentally distracted. . . ." People v. Muniz, 31 Ill2d 130, 138, 198 NE2d 855. We conclude that defendant's confession was properly admitted in evidence.

Defendant next contends that there is no evidence in this case to corroborate the confession and establish the corpus delicti, citing People v. Jones, 26 Ill2d 381, 386, 186 NE2d 246. While it is true that a voluntary confession may be insufficient, without more, to sustain a conviction, the required corroborating evidence need only tend to confirm some of the circumstances related in the confession and need not be sufficient in itself to prove the corpus delicti. The confession and the corroborating evidence are to be considered together. People v. O'Neil, 18 Ill2d 461, 464, 165 NE2d 319; People v. Gavurnik, 2 Ill2d 190, 194, 117 NE2d 782.

There is uncontradicted testimony in the record which tends to confirm the circumstances related in defendant's confession. Officer Gibson testified that he arrested defendant inside the General Tire store. He also testified that, prior to this arrest, he observed that two windows leading to the office of the store had been broken and that three typewriters and three adding machines were stacked on tables and on the floor close

202

to one of the broken windows. All of these facts are perfectly consistent with the content of defendant's confession and tend to prove the truth thereof. We think that the corpus delicti of the offense in this case was established beyond a reasonable doubt.

Finally, defendant argues that the trial court erred in failing to consider testimony of his codefendant Young. We find no merit in this contention. The record shows that defendant's own counsel moved to delete the testimony which he now claims would tend to show that he was "in a drunken stupor" at the time of his confession. Defendant fails to acknowledge, however, the counterbalancing detrimental effect which this testimony would also have had on his case, since it certainly would have contained evidence in substantial corroboration of his confession. Defendant's counsel at the trial apparently chose to avoid the certainty of damaging corroborating evidence rather than chance the uncertain possibility that such evidence would render the entire confession inadmissible. We cannot say that the result would have been any different if contrary action had been taken. This situation presents only an attorney's concern which is the "product of reflective hindsight" (People v. Palmer, 31 Ill2d 58, 66, 198 NE2d 839) and it is "clear that a misapprehension of counsel cannot be regarded as an error on the part of the court." Ogden v. People, 134 Ill 599, 602, 25 NE 755.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.