**The People of the State of Illinois, Plaintiff-Appellee, v. William Chavis, et al., Defendants-Appellants.**

**Gen. Nos. 50,153, 50,154, 50,155, 50,156 and 50,157.**

First District, Fourth Division.

January 4, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Klein, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants, Anthony Strong, Wesley Bynum, Dennis Bynum, William Monroe and William Chavis, were jointly indicted and tried (in a bench trial) for attempted murder, attempted robbery and aggravated battery. They were found guilty "in manner and form as charged in the indictment." Chavis, Monroe and Dennis Bynum were sentenced to the penitentiary.[1] Strong and Wesley Bynum were sentenced to the Youth Commission. Each

---

[1] Chavis (age 23) received a sentence of four to ten years; Monroe (age 18), one to ten years; and Dennis Bynum (age 17), two to ten years. Strong and Wesley Bynum were ages 15 and 16, respectively.

defendant filed a separate appeal, all of which were consolidated upon motion of the defendants.

**Contentions on Appeal**

I. Anthony Strong

 A. Evidence which was obtained by an illegal search and seizure was erroneously introduced at the trial;

 B. The evidence was insufficient to prove him guilty of attempted murder because the requisite intent to commit murder was not shown.

II. The Remaining Four Codefendants

 A. Their alleged confessions were inadmissible and no other competent evidence was adduced connecting them with an attempt to commit murder.

 B. The requisite intent to commit murder was not proven.

 C. Alternatively, their sentences should be reduced because the evidence does not show that they intended to murder the complaining witness.

**Evidence at Trial**

According to the evidence adduced by the prosecution, on May 6, 1964, at approximately 9:00 p. m., defendants Strong and Chavis entered Harry's Liquor Store, ordered a short beer and walked out. Shortly thereafter Strong and Chavis reentered the store, Chavis went to the rear and ordered a beer from the bartender (Elijah Brown) and Strong went to the cash register in front, where he was approached by the operator of the liquor store, Harry Berkowsky. Strong pointed a gun at him and announced that "This is a stickup," after which he (Berkowsky) grabbed for a gun which was beneath the counter and was shot by Strong. (Berkowsky could not remember whether he fired any shots at Strong, but Strong stated that he fired at Berkowsky after the

13

latter grabbed a gun and started shooting.) Elijah Brown rushed to the front of the store but Strong had fled; he grabbed Berkowsky's gun and held it on Chavis until the police arrived.

Chavis was arrested, after which he described the other four defendants and said that they lived at 1668 Christiana. Wesley Bynum and William Monroe were arrested by Officers Roney and Phelan who were enroute to that address, and were taken to the liquor store where they were identified by Chavis. Wesley Bynum was left in the company of other officers and Officers Roney and Phelan rode around the neighborhood of the Christiana address in the company of Monroe. Monroe told them that Strong had shot Berkowsky and also admitted his own complicity in the attempted robbery, stating that:

(1) along with Wesley Bynum and another boy, he obtained a clothes line and was waiting outside the store until an "all clear signal was given; (2) that they were then going to enter the store and tie up the patrons; and (3) they heard shots and ran. Monroe further told the officers that Strong was shot and, as far as he knew, Strong was at home. Officers Roney and Phelan then returned to the liquor store, informed the other officers of their conversation with Monroe and, along with two other officers (and Monroe), proceeded to the Christiana address where Anthony Strong lived with his family in a third-floor apartment. The officers entered and searched Strong's apartment after being told by his sister that Strong had been taken to the hospital with a bullet wound. In a search of Strong's bedroom the officers found a black waist-length jacket, a white shirt with stripes, and a black felt hat (all of which were lying in open view on the bed). There were bloodstains and a hole in

14

the right shoulder of the jacket and shirt.[2] The officers also found a holster in a dresser drawer. Defendants filed a motion to suppress all of the aforesaid items and, after a hearing thereon, only the holster was ordered suppressed. The officers took Monroe to Cook County Hospital where Strong was found and identified by the bartender, Elijah Brown. (Strong was also identified at the trial by Berkowsky, who was unconscious for approximately one week following the robbery.) Monroe and Strong conferred, after which Monroe told the police that the gun was in "Cookie's apartment." (Cookie was Dennis Bynum.) The gun was found and Dennis Bynum was subsequently arrested. At the police station Dennis Bynum admitted his complicity in the attempted robbery, identified himself as the third person who was outside the liquor store awaiting the "all clear" signal, and related the same facts as those told to the police by William Monroe upon the latter's arrest. Subsequently Chavis gave the police a confession implicating all of the defendants herein which he signed and which was also signed by Monroe and Dennis Bynum. Wesley Bynum, who claimed he could not read or write, did not sign the statement but acknowledged that it was accurate.

At the trial all of the defendants denied attempting to rob the liquor store but admitted that they had considered it. Strong admitted entering the store with Chavis, with a gun in his possession, but stated that he only wanted a pack of cigarettes. Monroe and Dennis Bynum stated that they signed the confession only as witnesses, but according to Chavis the police were asking questions of all the defendants and they all signed the confession as their own. Wesley Bynum stated that he

---

[2] The jacket and hat were identified as being similar to the ones worn by Strong in the robbery attempt. The shirt was never introduced into evidence.

refused to sign the confession because he didn't attempt to rob the store.

### Evidence at Hearing on Motion To Suppress [3]

At this hearing Officer Phelan testified that the officers knocked on Strong's apartment door with their guns drawn; that a sister of Strong opened the door and informed them that Strong had been taken to the hospital by their parents because he had been shot; that she granted them permission to search the apartment; and that they found the aforesaid articles.

Defendant's sister (Katie Strong) testified that there was a knock on the door; that another sister started to open the door after a voice said "It is me"; that the door was kicked open and the police officers, with guns drawn, demanded to know the whereabouts of "Willie"; that she told them Willie was at St. Charles (Willie was another brother); that they then searched the house and took the articles in question; and that after discovering the articles they inquired as to the whereabouts of her brother, Anthony.

In refusing to suppress the articles found on the defendant's bed the trial judge stated:

> Considering all of the evidence, there could be no doubt that the police had grounds to believe that a crime had been committed. . . .

> [T]he police had a right to enter the third floor living quarters [Strong's apartment] . . . in pursuit of Strong who was named by Monroe, who was at least a suspected participant in the crime. Once within the premises in a search for Strong which

---

[3] A gun taken from the Bynum residence in the same building was allowed into evidence and was identified as similar to that used in the attempted robbery. While this gun was also the subject of the motion to suppress, defendants do not urge in this appeal that the court erred in refusing to suppress the gun.

16

they had a right to do, I hold that the police had a right to seize anything in open view that appeared to have some connection with the crime.

## Opinion

I. Anthony Strong
█ A. The trial judge was correct in his refusal to suppress the articles of clothing which were lying in open view on defendant's bed. At the hearing on the motion to suppress Officer Phelan testified that after Monroe was arrested he admitted his participation in the attempted robbery and implicated Anthony Strong; that Monroe further stated that as far as he knew Strong was at home; and that Monroe took the officers to Strong's home. Moreover, Strong's address was given to the police by Chavis as being the address where the other participants in the crime could be found. Therefore, when the police arrived at Strong's apartment they had reasonable grounds to believe that Strong had committed a crime and that he was at home. They could then legally enter the apartment even without the consent of Strong's sister, who opened the door.
█ While defendant asserts that the police believed Strong's sister when she told them that Strong was not at home we find no substantiation for this assertion in the record. In response to the somewhat unclear question: "Did you walk around the apartment with your gun drawn with that fourteen or fifteen year old girl . . ." (referring to defendant's sister who let them in), Officer Phelan said: "No, sir, we did not." However, on cross-examination Phelan stated that they entered the apartment looking for Anthony Strong and their guns were drawn "until we determined that Anthony Strong was not in the apartment." Therefore, once within the apartment in a legal search for Strong, the police had a right to seize anything in open view that appeared

17

to have some connection with the crime. People v. Stewart, 23 Ill2d 161, 177 NE2d 237.

██ B. Strong was charged in the indictment (in separate counts) with attempted murder, attempted robbery and aggravated battery and the trial judge as trier of fact found him guilty "in manner and form as charged in the indictment." This finding is sufficient to sustain the conviction on any count of the indictment (People v. Spector, 47 Ill App2d 103, 196 NE2d 507; People v. Strong, 21 Ill2d 320, 172 NE2d 765), and therefore Strong was found guilty on each of the aforesaid counts in the indictment. Defendant does not strenuously contend that the evidence is insufficient to prove him guilty of attempted robbery or aggravated battery. The sentence imposed by the court was within the statutory range for any of the crimes charged in the indictment.[4]

██ Moreover, in considering defendant's contention that the evidence does not sustain a conviction of attempted murder, we note that prior to the adoption of the Criminal Code of 1961 (Ill Rev Stats 1963, c 38) there was no crime entitled "attempted murder." There was, however, the crime of "assault with intent to murder" (Ill Rev Stats 1961, c 38, § 59) which was defined as an attempted murder, as follows:

> Whoever attempts to commit murder by poisoning, drowning, strangling or suffocating another, or by any means, shall be guilty of the crime of assault with intent to murder, and punished accordingly.

---

[4] A person convicted of attempt may be imprisoned for a term not in excess of the maximum period provided for the offense attempted. Ill Rev Stats, 1963, ch 38, § 8–4(c). The maximum imprisonment for robbery is 20 years. Ill Rev Stats, 1963 ch 38, § 18–1(b).

The maximum penalty for aggravated battery is ten years in the penitentiary.

18

In Hamilton v. People, 113 Ill 34, the evidence was sufficient to convict the defendants of assault with intent to murder. In that case the defendants were discovered stealing watermelons by the farmer who owned the land and, in the course of events that ensued, they shot at the farmer with a pistol and assaulted him with a hoe. The aforesaid case was relied upon in People v. Bashic, 306 Ill 341, 137 NE 809, wherein the court stated at pages 344–345 that:

> The principal argument for the plaintiffs in error is, that the evidence for the People proved that if any crime was committed it was the crime of assault with intent to rob and not with intent to kill and murder, and that there being a specific intent to rob, the intent to kill required by the statute and law was lacking. Where the crime charged is an assault with intent to murder, . . . the intent must be . . . proved as charged either by the declaration of the accused or be inferred from the character, manner and circumstances of the assault . . . .

> [A]lthough there is an intent to accomplish one crime there may be an alternative or concurrent attempt to take life.

In the instant case, according to testimony evidently believed by the trier of fact, Anthony Strong pointed a loaded gun at the operator of the liquor store, Harry Berkowsky, announced that "This is a stickup" and severely wounded Berkowsky when the latter reached for a gun while resisting the holdup attempt. Considering the character, manner and circumstances of defendant's acts we find that the evidence is sufficient to prove him guilty of attempted murder.

II. The Remaining Four Codefendants
■ ■ Dennis Bynum and William Monroe contend that they signed the confession of William Chavis only

as witnesses and not as cosigners thereto. Wesley Bynum contends that he never signed the confession nor that he ever admitted his participation in the crime. According to the testimony of the police, however, Dennis Bynum and Monroe admitted their complicity in the crime and signed in the capacity of cosigners; and while Wesley Bynum did not sign because he stated that he could not read or write, he orally acknowledged the accuracy of the confession. It is an established principle that the credibility of the witnesses is for the trier of fact to determine. In the instant case the trial judge, as trier of fact, believed the testimony adduced by the prosecution and we will not substitute our judgment for his.

Moreover, according to the testimony of the police Chavis, Monroe and Dennis Bynum orally admitted their participation in the crime to the police prior to signing the written confession.

 Failure to warn an accused of his right to remain silent or of his right to counsel prior to a confession does not render that confession inadmissible. People v. Kees, 32 Ill2d 299, 205 NE2d 729.[5]

B. The defendants were charged in the indictment (in separate counts) with attempted murder, attempted robbery and aggravated battery and were found guilty "in manner and form as charged in the indictment." Since this finding is sufficient to sustain the conviction on any count in the indictment the defendants were found guilty on each of the aforesaid counts. It is without question that the evidence supports the conviction of attempted robbery since each of the

---

[5] Miranda v. Arizona, 384 US 436, is applicable only to cases in which the trial began after the decision therein in June, 1966, (Johnson & Cassidy v. New Jersey, 384 US 719), and therefore it is inapplicable to the instant case where the trial was held in 1964.

defendants admitted his participation therein. The Illinois Criminal Code (Ill Rev Stats 1963, c 38, § 5–2) provides that:

> A person is legally accountable for the conduct of another when:
>
> . . . . . .
>
> (c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. . . .

The aforesaid legal responsibility extends to any act committed by such other person in furtherance of the common design. People v. Kolep, 29 Ill2d 116, 193 NE2d 753. In the instant case, since each of the remaining four defendants admitted his participation in and agreement to the commission of the robbery each is legally accountable for the attempted murder of Harry Berkowsky committed by Anthony Strong during the course of the robbery.

C. We find that the trial judge was justified in imposing the respective sentences.

**Holding on Appeal**

The judgment of the trial court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.