**People of the State of Illinois, Plaintiff-Appellee,
v. George Washington, Defendant-Appellant.**

Gen. Nos. 52,419, 53,377.

First District, First Division.

October 6, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (John E. Hughes, Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant was found guilty of burglary and was sentenced to the penitentiary for a term of two to four years. On appeal he contends that the trial court erred in (1) accepting his jury waiver, and (2) admitting evidence in violation of defendant's Fifth and Sixth Amendment rights, as set forth in Miranda v. Arizona, 384 US 436 (1966).

The prosecuting witness, Arthur J. Arthur, owner of Cohen's Department Store at 739 South California Avenue in Chicago, testified that on January 26, 1967, he closed his store and, upon returning on January 28, 1967, he found the iron gates on the front window torn off, the window glass broken, and no merchandise left. He did not see anyone take the merchandise.

Police Officer Robert Keating testified that about 1:45 a. m. on January 28, 1967, he and his partner were cruising in their squad car in the area of California and Lexington. When about 60 feet away, they saw defendant and another man come out of Cohen's Department Store, carrying what appeared to be clothing. The police officers chased both men. Defendant was

caught and, after being told at gunpoint to stand still, he dropped some clothing. Defendant was then searched and handcuffed.

Officer Keating had a conversation with defendant before they entered the squad car, in which "I advised him that he had the right to remain silent, that anything he might say might be used against him in future proceedings; that before any statements were taken, he was entitled to an attorney; and if he did not have an attorney, that he would be appointed one before any statements were taken." Officer Keating then asked him if he understood, and defendant said "yes." The officer further said that after they entered the squad car "I asked him what he was doing in the store. He replied that he was in the store, he saw other people in there and that they were taking things and he thought he would too."

Police Officer Arthur Hajek testified that he was Officer Keating's partner. He saw defendant Washington coming through a window at 739 South California, carrying a bundle under his arm. Another person came out before defendant, and while Officer Keating was chasing defendant, he unsuccessfully chased the other man. On cross-examination Officer Hajek did not recall testifying before the grand jury that he saw "one male negro coming out of the front showroom," and this was the man apprehended by Officer Keating.

David Selig, an Assistant State's Attorney for Cook County, also testified for the State. He was riding with two other police officers in a squad car on the night in question and saw two men come out of the department store. He saw defendant's arrest but did not see anything in defendant's hands. He further testified, "The person I saw exit the window is the same person now on trial—George Washington—and he is the same one I saw the arresting officer have in custody."

Defendant testified that he was 21 years of age and on January 28, 1967, he was on his way home from a poolroom when he was arrested at 739 South California Avenue. He did not at any time enter Cohen's Department Store, and the shirt and overalls that he was found carrying at the time of his arrest were not stolen, and he "got them off the ground couple feet before the store." After he picked them up "a fellow jumped out of the window and all at once, the police came and shot, and he said 'Hold it' and then I dropped the shirts on the ground and threw my hands up in the air and then he came down and said, 'Where is your partner?' I said, 'I don't have a partner.' He said, 'Who is that that jumped out of the window?' I said, 'I don't know.' Then the other one went down the street and I was up there, standing up talking to the other one."

Considered first is defendant's contention that the trial court erred in accepting a jury waiver. At the trial defendant was represented by John D. Dillner, an Assistant Public Defender. The report of proceedings shows that when the case was called for trial, the following colloquy took place:

Defense Attorney: "Defendant is ready for trial."

Prosecutor: "State is ready."

Defense Attorney: "Defendant has executed a jury waiver and at this time I will tender it to the court."

Prosecutor: "Let the record show the defendant says he knows what a jury is."

The Court: "Are you willing to be tried by this Court rather than a jury?"

Defendant Washington: "Yes."

The Court: "You waive your right to a jury?"

Prosecutor: "Do you have a question?"

Defendant Washington: "No."

The Court: "Plea is not guilty."

Defendant argues that "the defense attorney advised the court that the defendant had executed a jury waiver and that he tendered it to the court. However, this statement does not indicate that the defendant knew or was informed of the meaning or consequences of a jury trial as compared with a bench trial, nor does the statement of the court: 'You waive your right to a jury' explain what a jury trial means or what it means to be tried by the court. This is not what is meant when waiver must be made understandingly in open court."

■ Defendant's authorities include People v. Surgeon, 15 Ill2d 236, 238, 154 NE2d 253 (1958) ; People v. Fisher, 340 Ill 250, 265, 172 NE 722 (1930) ; Patton v. United States, 281 US 276 (1930) ; People v. Suarez, 96 Ill App2d 153, 237 NE2d 841 (1968). In substance, these cases affirmatively show that "the trial court is charged with the duty to see that the election of an accused to forego a trial by jury is both expressly and understandingly made. That duty cannot be perfunctorily discharged." People v. Surgeon, supra, p 238.

■ We think the remarks made by the Illinois Supreme Court in People v. Richardson, 32 Ill2d 497, 499, 207 NE2d 453 (1965), apply here:

> "Whether a jury waiver has been knowingly and understandingly made depends upon the facts and circumstances of each case, and there can be no precise formula for determining whether a waiver is understandingly made. . . . Merely because the court did not at length discuss the consequences of the jury waiver does not necessarily require a holding that the waiver was not understandingly made. . . . While the trial court might well have dwelt at more length on this matter in complying with its duty to

insure that the jury waiver was expressly and understandingly made . . . , we believe that this record indicates that defendant understandingly waived his right to trial by jury."

■ ■ We agree that the trial court has the duty to see that an accused person's election to waive a jury trial is not only expressly but also understandingly made, and the performance of that duty cannot be perfunctorily discharged. Here, the colloquy between the court, defendant's counsel and defendant indicates that defendant knew he had a right to a jury trial, and that his jury waiver was "knowingly and understandingly made." *Also,* the trial court was entitled to rely on the professional responsibility of defendant's attorney that when he tendered to the court defendant's jury waiver, which had been previously executed, it was knowingly and understandingly executed by his client. "Defendant is not permitted to complain of an alleged error which was invited by his behavior and that of his attorney." People v. Melero, 99 Ill App2d 208, 211, 240 NE2d 756 (1968) ; People v. Novotny, 41 Ill2d 401, 244 NE2d 182 (1968).

Defendant also cites People v. Brownlow, 114 Ill App2d 458, 252 NE2d 685, which disagrees with our jury waiver pronouncements made in People v. Melero, supra, concerning "the professional responsibility of defendant's attorney." We think this point is answered in People v. Novotny, supra, where it is said (p 409) :

"In this jurisdiction it has been held that a defendant must be said to have acquiesced when he has permitted his attorney in his presence and without objection on his part to waive a jury trial. (People v. King, 30 Ill App2d 264; People v. Stolfo, 32 Ill App2d 340.) In Application of Banschbach, 133 Mont 312, 323 P2d 1112, the rationale behind these decisions is set forth as follows: 'Of course, if accused proceeds to trial without making his desires for a jury known,

then he waives a jury trial under the rule stated in Ex parte Lewis, 85 Okl Cr 322, 188 P2d 367, and Ex parte Guisti, 51 Nev 105, 269 P 600. In other words, he is not permitted to gamble on the outcome before the judge without a jury and then if dissatisfied make a belated demand for a jury.' 323 P2d at 1114–5."

In the instant case, even though the result of his jury waiver "may now be unsatisfactory to defendant," we find that it was not error for the trial court to accept and act upon it.

Considered next is defendant's contention that the incriminating statement he made to Officer Keating after his arrest, and in the squad car, should not have been admitted into evidence, because he did not make an intelligent waiver of his Fifth and Sixth Amendment rights established in Miranda v. Arizona, 384 US 436. Defendant asserts that he was subjected to custodial interrogation, thus activating his Fifth Amendment privilege against self-incrimination. On this point defendant cites Miranda v. Arizona, where it is said (p 478) :

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to

325

any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

Defendant further notes that in Miranda it is said (p 475):

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel."

Defendant contends that the State did not sustain its burden of proving waiver of the Miranda rights because "the ritualistic compliance in terminology which the defendant, a 21-year-old, could not understand is not adequate." Defendant claims that he was not advised that he could terminate the questioning at any period, even though he might originally have waived his rights. Finally, defendant argues that the waiver of these constitutional rights requires the court to consider the defendant's age, intelligence, education and background, and here the defendant was young and the questioning took place in a squad car. Defendant further argues that "Officer Keating did not show affirmatively that the defendant understood his Miranda rights and that he expressly waived them. It is not enough to inform the suspect of his rights; nor is the fact that the suspect gave a statement after being informed of his Miranda rights indicative of a knowing waiver."

The State contends that the incriminating statement in question was admissible under the "procedural safeguards" and "warnings" required by Miranda v. Arizona; also, there was no physical coercion or incommunicado interrogation, and the fact that defendant was 21 years old does not mean that he was incapable of waiving his rights; and there is no requirement that one in custody, who has waived his constitutional rights, be informed that he can terminate the questioning at any time. The authorities cited by the State include In re Orr, 38 Ill2d 417, 231 NE2d 424 (1967), and People v. Hill, 39 Ill2d 125, 233 NE2d 367 (1968). In In re Orr, quoting from Miranda, the court held the confession admissible (p 424):

> "[I]t said (384 US at 478, 16 L Ed2d at 726): 'In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.' "

In People v. Hill, defendant, a 17-year-old boy, was questioned without the assistance of counsel on three or four separate occasions for ten to fifteen minutes each over a period of about three hours before he finally con-

fessed. The Miranda warnings were given only at the inception of the questioning. The court held (p 132):

> "The factors present here, of interrogations for relatively short periods of time, unaccompanied by any semblance of coercion, have been deemed sufficient to support a finding of the voluntariness of a confession made to law enforcement authorities where the Miranda rights have been clearly explained. . . . We also find it significant that despite Hill's original disavowal of any involvement in the murder, he in no way indicated to Detective Serafini 'any disinclination to submit to further questioning' . . . , and the circumstances of a defendant's freely answering certain questions posed by police has been held sufficient to rebut the normal presumption against waiver of constitutional rights."

 We conclude that although defendant was interrogated after being taken into custody, the State has sustained its burden of showing a knowing waiver of defendant's constitutional rights as set forth in Miranda v. Arizona, 384 US 436, 478. The record demonstrates that defendant's incriminating statement was "given freely and voluntarily without any compelling influences" after Officer Keating adequately informed him as to his Miranda rights. It was not necessary that defendant be informed that he could terminate the questioning at any period, and there was no physical or mental coercion shown so as to make his statement involuntary. We hold that the incriminating statement of the defendant, made while in the squad car immediately after his arrest, was properly admitted into evidence.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.