THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* LOUISE POTE, Defendant-Appellee.

(No. 55349;

First District—May 5, 1972.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and James S. Veldman, Assistant State's Attorneys, of counsel,) for the People.

Frank G. Whalen, of Chicago, for appellee.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

Pursuant to Ill. Rev. Stat. 1967, ch. 110A, par. 604, the State appeals from a pre-trial order suppressing certain statements given to an Asst. State's Attorney by defendant while a hospital patient.

■■ The sole reason stated by the trial judge in support of his ruling was that no one in the hospital had given the Asst. State's Attorney permission to see defendant. This being a patently insufficient reason in law, defendant, on appeal, seeks affirmance on other grounds which we shall consider in detail.

Defendant's theory in this court is that the statements were involuntary and made while defendant was under the influence of medications, drugs, and sedatives. The State contends that the record demonstrates the contrary.

On October 15, 1968, defendant, a Chicago police officer, was involved in a shooting which led to his indictment for murder. For the purpose of ascertaining the circumstances surrounding the occurrence in which defendant had also been shot, an Asst. State's Attorney, accompanied by a police officer and a court reporter, went to Englewood Hospital during the afternoon of October 17 to take a statement from defendant.

Defendant had been admitted to the hospital on October 15, 1968, at approximately 3:00 A.M., was treated for a gunshot wound in the hand, given a tetanus shot, and then returned to duty. He was readmitted to the same hospital at approximately 4:00 A.M. the same morning after he blacked out in the district police station. His condition was diagnosed by an intern at the hospital as a possible acute coronary insufficiency and he was transferred to the intensive care ward shortly thereafter. Defendant testified that from the time he blacked out until about two days later, he did not recall any events at the hospital. He said that he had no recollection of having made a statement to the Asst. State's Attorney on October 17 until he was informed of it by his attorney.

Dr. A. F. Montezon, defendant's attending physician, was medical director of the emergency room at the hospital when defendant was a patient there. At the hearing on the motion to suppress, he testified that according to hospital records, defendant was first admitted at 3:00 A.M. on October 15, 1968. He was given a tetanus shot which produces no harmful effect at all to the patient. A superficial wound of the hand was dressed and he was released. He came back at 4:40 A.M. complaining of chest pains, and he was given a Darvon capsule, a pain-relieving drug. Such a dosage could have no effect on a person's memory. On October 16, 1968, at about 4:00 P.M., defendant was given 75 milligrams of the drug Demerol, also a pain reliever. A normal dosage, he testified, depends on the size of the person and may be as much as 100 milligrams. Another 75-milligram dose of Demerol was administered to defendant at 10:00 P.M. the same day. Its effects usually last from two to four hours. No Demerol was administered to defendant on October 17, 1968, the day his statements were taken. He did not believe that any effect of this drug would be present in the patient on October 17. He had talked to defendant every day, and when he examined defendant on the 17th, he found him conscious, not confused, alert, able to answer questions understandably, and not suffering from any loss of memory. When defendant was first admitted on the 15th, he was in a state of shock, but not later that morning, and not on October 17. He did not recall giving any law enforcement person permission to speak to defendant.

Dr. Max Berg was called as a consulting physician in attendance on defendant from October 15, 1968, and throughout his time at the hospital. He testified that his examination of defendant between 10:00 and 11:00 A.M. on October 17, revealed the patient conscious and oriented, free of all pain or complaints, and he answered questions promptly and to the point. Defendant's electrocardiograms and other laboratory tests were normal. The witness was aware that defendant had been given Demerol prior to the 17th. Defendant was not under the influence of that drug at the time of his examination on the 17th. He had defendant transferred from the intensive care ward to one of the other rooms. He talked to an Asst. State's Attorney on the 17th and told him that defendant was much improved, and had not had a heart attack. He was not asked by anyone for permission to see defendant.

Asst. State's Attorney Motherway testified that at about 1:00 P.M. on October 17, 1968, he went to Englewood Hospital with Detective Robert Pearson and a court reporter, and he spoke with the hospital administrator, Mr. Schroeder. Dr. Berg, defendant's physician, was summoned to the administrator's office. The witness asked Dr. Berg if defendant's condition was such that he might be interviewed. Dr. Berg informed

him that defendant was alert and that any statement which might be taken from him would be meaningful. The witness asked the hospital administrator for permission to interview defendant. Whereupon, the administrator took them to defendant's room and introduced the witness to defendant as being from the State's Attorney's office.

The witness told defendant he had come to talk about the events in the Crystal Lounge, and advised defendant of his constitutional rights. Then they had a conversation, all of which was taken down by the reporter. He found defendant alert and oriented to his surroundings. Defendant understood and clearly responded to his questions, and there was no difficulty in understanding him. The statement took approximately 45 minutes.

Later the same day, at about 5:00 P.M., he returned to the hospital for another statement with the same police officer and another court reporter. He did not recall if he asked permission to interview defendant a second time. He introduced himself a second time by saying, "You might remember me, my name is Nick Motherway." Again he advised defendant of his rights and he still found defendant alert and able to understand all the questions.

At the hearing on the motion to suppress, the statement was read to defendant. He denied any knowledge of having been asked the questions or having given the answers contained therein.

It was stipulated that if the two court reporters were called as witnesses, they would testify that the statement was a true and accurate transcription of their notes taken at the hospital during the two conversations there with defendant on October 17, 1968.

OPINION

■■■ We believe the trial judge erred in granting defendant's motion to suppress. The point to be considered as to the admissibility of the statements is whether, without any compelling influences, they were freely and voluntarily made by defendant after he had been properly advised of his constitutional rights. (*Miranda v. Arizona*, 384 U.S. 436, 438. See also *People v. Washington*, 115 Ill.App.2d 318, 328, 253 N.E.2d 677.) Voluntariness is not to be determined by a single factor but by a consideration of all circumstances involved in the particular fact situation. *People v. Johnson*, 44 Ill.2d 463, 256 N.E.2d 343, *cert*. denied 400 U.S. 958.

■■■ A written statement signed by defendant is not involuntary when the answers to the questions are intelligent, direct, and positive, and there is no indication that defendant was distracted by pain or that his mind was diverted from the statement he was giving. (*People v. Davis*, 412 Ill. 391, 399, 107 N.E.2d 607.) When the statement is clear and lucid

and witnesses testify that at the time defendant was alert and able to give a rational statement, prior medical treatment with drugs will not render the statement inadmissible. See *People v. Muniz,* 31 Ill.2d 130, 138, 198 N.E.2d 855, and *People v. Hulet,* 66 Ill.App.2d 194, 202, 214 N.E.2d 299.

■■ The principle set forth in the paragraph next above is fully supported by the testimony of defendant's doctor, Dr. Montezon, by the consulting physician, Dr. Berg, by the Asst. State's Attorney, and by the clarity of the answers made by defendant himself in the statement which we have studied carefully, but find too lengthy to set forth in this opinion. Furthermore, the statement contains scarcely any departure from what defendant had told fellow police officers before he went to the hospital. In the face of all this evidence, particularly the medical testimony, it is just not enough for defendant to say that he simply doesn't remember anything about it.

The order of the trial court is therefore reversed and the cause remanded for further proceedings.

Reversed and remanded.

LORENZ, P. J., and DRUCKER, J., concur.