THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE G. BOWEL, Defendant-Appellant.

Third District   No. 3—84—0214

Opinion filed January 8, 1985.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant-appellant, Lawrence G. Bowel, was indicted for robbery and theft and was convicted of both offenses following a jury trial in Peoria County. The trial court entered judgment solely on the robbery conviction and sentenced the defendant to a five-year term of im-

prisonment. The defendant appeals.

The defendant contends that: (1) he was deprived of his right to trial by an impartial jury because the trial court refused to ask prospective jurors supplemental questions tendered by the defendant regarding his theory of mistaken identification; (2) the trial court denied him due process of law and a fair trial by refusing to admit testimony from a neighbor about a statement against penal interest by a person whom the defense accused of committing the offense; (3) the trial court erred by refusing to let him appear before the jury without handcuffs when the verdict was returned and the jurors were polled; and (4) his conviction for robbery should be reversed because the evidence does not establish that the snatching of the complainant's purse was accomplished by the use of force.

The facts pertinent to this appeal are as follows. The victim, Delorise Thomas, and her friend, May Ann Hall, drove to downtown Peoria on September 12, 1983. They arrived just after midnight and parked on Walnut Street. As the women began to cross the street, they noticed four black males at the corner of Adams and Walnut. When Thomas was at the middle of Walnut, one of the four men broke away from the group and approached her. When the man reached Thomas, he grabbed her left hand with his left hand and pulled the purse from her with his right hand. The man looked up and smiled at Thomas and then fled.

Thomas and Hall reported the incident to the police. Both women described the assailant as having a half-moon shaped scar on his left cheek under the eye, wearing jeans, a T-shirt, and tennis shoes, and carrying a radio with a rope for a shoulder strap. They differed slightly in their estimates of the assailant's weight and height. Thomas and Hall also described the other three men that had been with the assailant. A short time later two men were brought back to the station. Neither man was the assailant or had a scar, but Hall indicated that both men had been with the assailant.

On September 19, 1983, the defendant talked with Officer Millard at the Peoria police station. The defendant said that he had been with his brothers, Michael Bowel and John Griffin, and a friend, Glen Cooley, on the night of the incident. As they were walking near Adams and Walnut they saw two women getting out of a car. Cooley, who was carrying a tape player, walked toward the women and took a purse from one of them. On September 20, 1983, an in-person lineup was conducted. Hall selected the defendant as being the assailant because he had a moon-shaped scar under his left eye. However, Hall said she would not stake her life on her selection. Thomas viewed the lineup

separately and also selected the defendant. Thomas was positive of her selection after the men in the lineup were instructed to smile.

The defendant's first contention is that the trial court deprived him of his right to trial by an impartial jury because it refused to ask prospective jurors two supplemental questions he had tendered regarding the defense theory of mistaken identification. The questions were: "Have you ever greeted a stranger as an acquaintance because you mistook the stranger?" and "Has a stranger ever greeted you because of mistaken identity? Please explain."

The purpose of a *voir dire* is to assure the selection of a fair and impartial jury. It is not to be used to pre-educate or indoctrinate a jury. (*People v. Teague* (1982), 108 Ill. App. 3d 891, 894, 439 N.E.2d 1066, 1069, *cert. denied* (1983), 464 U.S. 867, 78 L. Ed. 2d 179, 104 S. Ct. 206.) In Illinois, the *voir dire* examination of prospective jurors is conducted by the trial judge, although the court may permit the parties to submit additional questions to it for further inquiry if it thinks they are appropriate. (87 Ill. 2d R. 234.) The scope and extent of the *voir dire* examination rests within the trial court's discretion. *People v. Lobb* (1959), 17 Ill. 2d 287, 300, 161 N.E.2d 325, 332.

■■ We find that the reasoning set forth in *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68, is dispositive. In *Witted*, the trial court refused to allow defense counsel to ask the prospective jurors the question, "Do you believe that a person can be mistaken about the identification of another?" In finding that the trial court had properly limited the *voir dire* examination, the appellate court stated that there was no basis for assuming that a person may harbor a bias or prejudice toward the defense of mistaken identity. Likewise, we are of the opinion that the supplemental questions tendered by the defendant in the case at bar would not have enabled the defendant to ascertain any bias or prejudice on the part of the prospective jurors. Rather, the questions would have served to pre-educate the jurors as to the defendant's theory of the case.

*People v. Zehr* (1984), 103 Ill. 2d 472, cited by the defendant, does not dictate that we find otherwise. In *Zehr*, the Illinois Supreme Court held that the trial court had erred in failing to ask the jury three supplemental questions submitted by the defendant. The first related to the State's duty to prove the defendant guilty beyond a reasonable doubt. The second related to the drawing of inferences from the defendant's failure to testify. The third related to the presumption of innocence. In contrast to the questions proposed by defense counsel in *Zehr*, the two supplemental questions tendered by the defendant here did not go to "the heart of a particular bias or prejudice which would

deprive defendant of his right to a fair and impartial jury." *People v. Zehr* (1982), 110 Ill. App. 3d 458, 461, 442 N.E.2d 581, 584, *aff'd* (1984), 103 Ill. 2d 472.

■ The defendant's second contention is that the trial court erred in refusing to admit testimony from a neighbor about a statement against penal interest by the person whom the defense accused of committing the offense.

In support of his theory of mistaken identification, the defendant intended to introduce testimony from three witnesses regarding statements by Glen Cooley that Cooley had taken Delorise Thomas' purse. Following an offer of proof, Herbert Hogan, who lived with the defendant's sister, was allowed to testify that Cooley came to his house on the afternoon of September 12, 1983, and stated that he had taken the purse. Following another offer of proof, John Bowel, the defendant's father, was allowed to testify regarding incriminating statements made by Cooley at a gathering near the Bowel residence on the evening of September 12, 1983.

Defense counsel also made an offer of proof in regard to the proposed testimony of Lee Otis Howard, who lived behind the Bowels. It was at his house that Cooley and several other people had gathered on the evening of September 12, 1983, and at which Cooley made the incriminatory statements to the defendant's father. The trial court determined that Howard's testimony was not trustworthy and refused to admit it.

A statement against penal interest will be admitted as substantive evidence provided it satisfies the following four-part test announced by the United States Supreme Court in *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, and adopted by the Illinois Supreme Court in *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1. First, the statement must have been made spontaneously to a close acquaintance shortly after the crime occurred. Second, the statement must be corroborated by some other evidence in the case. Third, the statement must be self-incriminating and against the declarant's interest. Fourth, the declarant must be available for cross-examination. This exception to the hearsay rule is a limited one. (*People v. Craven* (1973), 54 Ill. 2d 419, 429, 299 N.E.2d 1, 6.) If any one of the four parts is absent, then the hearsay declaration will not be admissible. *People v. Foster* (1978), 66 Ill. App. 3d 292, 294, 383 N.E.2d 788, 789.

In the present case, the first three factors appear to be met. The statement was made by Glen Cooley to John Bowel, who had known Cooley for 12 years. The statement was made by Cooley on the same

day as Delorise Thomas' purse was taken. The contents of Cooley's statement were corroborated by John Griffin, who testified that Cooley, not the defendant, had taken the purse. Furthermore, the statement by Cooley that he had taken the purse was certainly against his penal interest.

■ However, the fourth factor was not met. Several subpoenas were issued commanding Glen Cooley to appear in court. Cooley failed to appear, and the trial court issued a writ of body attachment. However, Cooley remained unapprehended throughout the defendant's trial. We find that because the declarant, Glen Cooley, remained unapprehended and thus was not available to the State for cross-examination, the trial court properly refused to admit Lee Howard's testimony.

We note that Lee Howard walked back and forth between several groups of people during the time that Cooley was talking to John Bowel. Thus, he did not hear the entire conversation. However, there is no requirement that the witness have heard the declarant's entire statement against penal interest. The fact that Howard did not hear the whole statement would affect his credibility, not the admissibility of his testimony. The State would have been able to adequately pursue this matter during cross-examination. We also note that Cooley made the statement to John Bowel, not to Lee Howard. However, there is no requirement that the statement be made to the witness, only that it be made to a close acquaintance. Here, John Bowel was a close acquaintance of Cooley. In addition, Lee Howard had known Cooley for three years.

Furthermore, even if we were to find, and we do not, that the trial court improperly excluded Lee Howard's testimony, the error would be harmless. The substance of Howard's testimony was the subject of Herbert Hogan's and John Bowel's testimony. Howard's testimony may have been more credible because he was not related to the defendant. However, Hogan was not related to the defendant either, although he did live with the defendant's sister. Thus, the trial court's ruling did not preclude the defendant from presenting the jurors with his theory that Cooley took Delorise Thomas' purse.

■ The defendant's third contention is that the trial court erred by refusing to let him appear before the jury without handcuffs when the verdict was returned and the jurors were polled. In support of this argument the defendant relies on *People v. Staley* (1977), 67 Ill. 2d 33, 364 N.E.2d 72, *People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303, and *People v. Brown* (1977), 45 Ill. App. 3d 24, 358 N.E.2d 1362. However, in all three cases, the defendant was shackled before the trier of fact reached a decision on the merits. Here, the jury had reached its

verdict. Any prejudice to the defendant which arose from his appearance in handcuffs before the jury at that stage of the proceedings is purely speculative. Therefore, we find that the trial court did not commit reversible error.

However, we believe that under similar circumstances in the future, where no reason for handcuffing a defendant appears on the record, the trial court should grant a defendant's request to appear before the jury without handcuffs when the verdict is returned and the jurors are polled.

The defendant's fourth contention is that his conviction for robbery should be reversed because the evidence does not establish that the snatching of the complainant's purse was accompanied by the use of force.

"A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(a).) "Thus, if no force or threat of imminent force is used in the taking, there is no robbery, although the act may constitute a theft." (*People v. Patton* (1979), 76 Ill. 2d 45, 48, 389 N.E.2d 1174, 1175.) Robbery is a Class 2 felony. (Ill. Rev. Stat. 1983, ch. 38, par. 18—1(b).) Theft from the person is a Class 3 felony, a lesser offense. Ill. Rev. Stat. 1983, ch. 38, par. 16—1(e)(3).

In the present case, Delorise Thomas was asked the following questions by defense counsel during cross-examination:

"Q. Did you have any bruises or marks on your hand as a result of this?

A. No, just kind of like you could tell where my fingers were a little red but not bad ***.

Q. Did you jerk your purse towards you or anticipate in any way that this man was going to take your purse?

A. Not until he already had my hand and he was pushing my hand behind me so I couldn't pull it to me.

* * *

Q. He snatched the purse from your hand?

A. Yes."

We believe that *People v. Patton* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174, cited by the defendant, is dispositive. In *Patton*, the victim had been carrying her purse in her fingertips down at her side. The defendant grabbed the purse very quickly, and as a result the victim's arm was thrown back "a little bit." The State argued that any amount of physical force used to overcome the force exerted by a victim to hold the object taken is sufficient to constitute robbery. However, the Illi-

nois Supreme Court held that the taking or "snatching" of a purse from a victim does not in itself constitute sufficient use of force, or threat of imminent use of force, to warrant a conviction for robbery.

Here, Thomas was carrying her purse by its opening at her side. The assailant approached Thomas quickly, grabbed her left hand with his left hand, and pulled the purse from her. While Thomas' hand was pushed back slightly, like the victim in *Patton*, and she was thus not able to pull it towards herself, this did not constitute sufficient use of force to warrant a conviction for robbery. She was not bruised, cut or injured in any way. Finally, the State does not contend that the defendant is guilty of robbery on the basis that he took Thomas' purse by "threatening the imminent use of force."

*People v. Kennedy* (1980), 88 Ill. App. 3d 365, 410 N.E.2d 520, and *People v. Sherman* (1980), 87 Ill. App. 3d 937, 409 N.E.2d 486, cited by the State, are distinguishable. Both cases involved the same victim. The victim's money bag was grabbed, and she was shoved into a garage. Thus, unlike the present case, there was direct evidence of the use of force.

As our supreme court advised in *People v. Williams* (1961), 23 Ill. 2d 295, 301, 178 N.E.2d 372, 376, "[w]here it is doubtful under the facts whether the accused is guilty of robbery or larceny [theft] from the person, it is the duty of the court and the jury to resolve that doubt in favor of the lesser offense." We find that the facts fail to demonstrate that Delorise Thomas's purse was taken by sufficient use of force to warrant the defendant's conviction for robbery.

■ There was, however, sufficient evidence to support a conviction for the crime of theft from the person. Theft may be established by a sufficient showing that one has knowingly obtained or exerted unauthorized control over the property of another with the intent to permanently deprive that person of the use or benefit of the property. Ill. Rev. Stat. 1983, ch. 38, par. 16—1.

For the foregoing reasons, the judgment and sentence of the circuit court of Peoria County for the offense of robbery are reversed. This cause is remanded with directions that the court enter a judgment of conviction for the offense of theft from the person pursuant to the jury's verdict and that the defendant be resentenced for the offense of theft from the person. See *People v. Patton* (1978), 60 Ill. App. 3d 456, 376 N.E.2d 1099, *aff'd* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174.

Reversed and remanded with directions.

HEIPLE and BARRY, JJ., concur.