THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM NALLY, Defendant-Appellant.

Second District   No. 84—0278

Opinion filed July 15, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Robert J. Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

After jury trial defendant, William Nally, was convicted of the offense of unlawful use of weapons (possession of a firearm in a place licensed to sell liquor) (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(8)). As the offense occurred within five years of defendant's release from the penitentiary, it became a Class 3 felony, and he was sentenced to an extended term of 7½ years imprisonment. He appeals, contending (1) the evidence was insufficient to establish guilt; (2) the trial court erred in barring defendant from calling a witness and barring defendant from testifying to admissions of the witness; and, (3) that the sentence imposed was an improper double enhancement of a prior conviction and an abuse of discretion.

Defendant was tried twice on this charge as the first jury was unable to agree upon a verdict in the first trial and a mistrial was declared in September 1983. In the second trial held in December 1983, Kane County Deputy Sheriffs Kenneth Ramsey and Pete Burgert testified they, and other officers, entered the South End Tavern near Elgin at 10:30 p.m. on April, 23, 1983, to make a routine check for minors drinking. The officers were in uniform, and when they entered the bar they saw defendant, who was seated there between a man and woman, make furtive movements by placing his hands near his waist as if to remove something from it and then leaning towards the bar with his arms moving downward as he momentarily hunched over the bar. The officers then heard a "thunking" noise and defendant sat up straight on the bar stool. The other people at the bar sat still during this time with their hands on the bar. The officers immediately moved defendant from his stool and found a 9 mm. Smith and Wesson revolver, which was loaded with dumdum bullets, lying against the bar footrest in front of defendant's stool. Subsequent forensic examination of the weap-

ons disclosed no identifiable fingerprints on it or the bullets. No other evidence was presented relating to ownership or possession of the gun.

The State and defendant stipulated that the tavern was duly licensed to sell liquor and that defendant, after having previously been convicted of a felony, had been released from the penitentiary on December 10, 1980, a time within five years of the present offense. See Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b).

Defendant testified, denying he had ever seen or possessed the gun found in the South End Tap. He stated that shortly before his arrest he had experienced an "insulin reaction" and blacked out for a period of time (he requires two shots of insulin each day). Nally testified he did not remember the officers entering the tavern, but only that they grabbed him and accused him of having a gun. He stated the insulin reaction had started while playing pool and Carol Steffen, the bartender, had helped him to his seat at the bar and attempted to feed defendant a candy bar to aid his condition.

Carol Steffen and Mr. and Mrs. Jack Cobb, who were defendant's friends, testified he had suffered an insulin reaction that night and Steffen was trying to help him when the officers entered. None of these persons saw anyone in possession of a gun that night. Evidence was also presented that Jack Cobb had been previously convicted of felony theft and that when defendant left the tavern in custody of the officers he did not need assistance.

Before defendant testified, his counsel advised the trial court, in chambers, that he had subpoenaed and intended to call as a witness one Lloyd Greenley, a bar patron who had been sitting next to defendant when the officers entered. Counsel stated that Greenley had come to his office with defendant at some time prior to this trial and had told counsel that he was willing to testify that the gun found in the bar belonged to him. The State's Attorney suggested that the judge advise Greenley of his privilege against self-incrimination and the court did so. Greenley thereupon informed the judge that he had already retained a lawyer and had been advised by his counsel not to answer any questions "under the Fifth Amendment" and that he would invoke that privilege if called upon to testify as a witness. As a result, the trial court ruled, over defendant's objection, that the witness could not be called before the jury.

When defendant testified the following colloquy occurred in his cross-examination by the State:

"Q. [Prosecutor] And you asked them [the Cobbs] to testify in this case, right?

A. [Defendant] I have talked to them, yes.

Q. And the same would hold true for Mr. Greenley, correct?

A. I have talked to him, yes.

Q. And the other people in the bar that night were your friends, too, right?

A. Pretty much.''

The defense rested after defendant's testimony but later sought to reopen its case so that defendant could testify to Greenley's purported admission the gun was his, arguing that the foregoing cross-examination by the State had opened the door for it. The trial court declined to permit defendant to reopen his case for that testimony, holding it to be inadmissible hearsay.

## I

### SUFFICIENCY OF THE EVIDENCE

Defendant contends first that the evidence was insufficient to sustain the verdict as no one testified they saw him with the gun and no other evidence, such as fingerprints or proof of ownership, linked defendant to the gun.

■ A reviewing court will not ordinarily substitute its judgment for that of the trier of fact, whose function is to weigh the evidence, resolve any apparent conflicts or inconsistencies therein and assess witness credibility. (*People v. Lanasa* (1983), 113 Ill. App. 3d 516, 521, 447 N.E.2d 1002; *People v. Ortiz* (1981), 96 Ill. App. 3d 497, 501, 421 N.E.2d 556, *appeal denied* (1983), 96 Ill. 2d 547.) Only when a judgment is so improbable or palpably contrary to the evidence as to raise a reasonable doubt of guilt will a reviewing court reverse it. (*People v. Fox* (1983), 114 Ill. App. 3d 593, 597-98, 449 N.E.2d 261, *appeal denied* (1983), 96 Ill. 2d · 544.) Of course, a defendant need not be observed in possession of a gun if the evidence circumstantially proves he had possessed it. *People v. Washington* (1975), 35 Ill. App. 3d 92, 93-94, 341 N.E.2d 39.

Having closely reviewed the evidence, we conclude that the question of defendant's possession of the gun was for the jury, and we will not reverse its judgment. The decisions of *People v. Archie* (1969), 105 Ill. App. 2d 211, 245 N.E.2d 59, and *People v. Evans* (1966), 72 Ill. App. 2d 146, 218 N.E.2d 781, which defendant urges as support for reversal of his conviction, do not persuade us otherwise.

In *Archie*, defendant was detained by a school official in a

teacher conference room until the police arrived after a student had said he had been selling marijuana. A policeman arrived and, as he talked to the school official, he observed defendant take his hand out of his pocket and hold it straight down; the officer walked to where defendant had been standing and found on the floor a marijuana cigarette two to six inches from defendant's left side. Because defendant's removing his hand from his pocket was not an uncommon gesture, he made no other suspicious movements and his lone action did not suggest he had thrown something to the floor, and the officer failed to testify which arm had been lowered, whereas he found the contraband close to the defendant's left side, the court reversed the conviction for marijuana possession. (*People v. Archie* (1969), 105 Ill. App. 2d 211, 213-15, 245 N.E.2d 59.) But here, the deputies observed a series of suspicious, furtive movements by defendant while the others at the bar kept their hands upon it, and, unlike in *Archie*, there was the noise heard by the deputies after defendant's movements which supports a conclusion that the gun was dropped to the floor and was not lying there earlier.

*People v. Evans* (1966), 72 Ill. App. 2d 146, 218 N.E.2d 781, is similarly distinguishable. The defendant in *Evans*, who was sitting at the bar in a tavern, left his seat and hurried towards the men's room just as two policemen entered; based on an informer's tip, they were looking for a man thought to be possessing drugs. The officer found two packages containing drugs stuck to the underside of the bar with chewing gum. The court reversed defendant's conviction for possession of those drugs, because, despite his suspicious conduct of leaving when he saw the policemen, there was no evidence of how long the drugs had been under the bar and they could have been put there by anyone at any time. (72 Ill. App. 2d 146, 147-49.) Unlike these cases, the evidence here was sufficient to support the verdict. See *People v. McKnight* (1968), 39 Ill. 2d 577, 237 N.E.2d 488; *People v. Richardson* (1961), 21 Ill. 2d 435, 172 N.E.2d 801; *People v. Washington* (1975), 35 Ill. App. 3d 92, 341 N.E.2d 39.

## II

### PROCEDURAL AND EVIDENTIARY RULINGS

We next consider defendant's assertion the court erred in barring him from calling Lloyd Greenley after Greenley advised the court he would invoke his fifth amendment privilege against self-incrimination if called to testify.

■ It has been often held that it is improper for a party to call

a witness whom he has reason to believe will invoke this privilege before the jury, and a trial judge does not err when he precludes calling such a witness. *People v. Myers* (1966), 35 Ill. 2d 311, 334, 220 N.E.2d 297; *People v. Crawford Distributing Co.* (1979), 78 Ill. 2d 70, 397 N.E.2d 1362; *People v. Cvetich* (1979), 73 Ill. App. 3d 580, 391 N.E.2d 1101.

Defendant argues, however, the rule has been superseded by the supreme court's decisions in *People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E.2d 261, and *People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199, which, he notes, approved of the defense tactic of calling witnesses to the stand and forcing them to there invoke their fifth amendment privilege. In both those cases the court considered the issue of whether a defendant's appointed counsel, an assistant public defender, had a conflict of interest and rendered ineffective representation because another attorney from the same office represented a codefendant. In both cases the court held there was no conflict and the attorney had loyally and zealously represented his client. In doing so, the court noted each attorney had successfully requested the opportunity to call the codefendant. despite his intention to invoke his privilege against self-incrimination on the advice of counsel, and the privilege was asserted before the jury, which the court observed may well have benefited the defense. (*People v. Nelson* (1980), 82 Ill. 2d 67, 73-75, 411 N.E.2d 261; *People v. Miller* (1980), 79 Ill. 2d 454, 463-64, 404 N.E.2d 199.) The legal propriety of the defense requests in those cases to call a witness who would invoke the privilege was not at issue, and the decisions do not suggest that the general rule applicable in such case has been eroded. We conclude the court's denial of defendant's request to call Lloyd Greenley as a witness in these circumstances was correct.

■ Defendant also contends the trial court should have allowed him to reopen his case so he could testify that Lloyd Greenley had admitted to him that it was his gun that was found in the tavern. He argues that the court abused its discretion in barring this testimony because: (1) it was admissible as evidence of an admission against penal interest; and (2) regardless of admissibility, the State's cross-examination of defendant, which elicited he had asked Greenley to testify for him, opened the door to evidence of Greenley's admission.

The admission-against-penal-interest exception to the hearsay rule has limited application, and the general prohibition against evidence of unsworn admissions to crime by a third party is only relaxed where justice demands it. (*People v. Tate* (1981), 87 Ill. 2d

134, 143, 145, 429 N.E.2d 470; *People v. Lettrich* (1952), 413 Ill. 172, 178, 108 N.E.2d 488.) For such evidence to be admissible four indicia of reliability must be satisfied: (1) the hearsay statement was made spontaneously shortly after the crime to a close acquaintance; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (*People v. Tate* (1981), 87 Ill. 2d 134, 143-44, 429 N.E.2d 470; *People v. Craven* (1973), 54 Ill. 2d 419, 427-29, 299 N.E.2d 1; *People v. Bonilla* (1983), 117 Ill. App. 3d 1041, 1043, 453 N.E.2d 1322.) It is well established that all four conditions must be met or the evidence is inadmissible. (*People v. Bowel* (1985), 129 Ill. App. 3d 940, 944, 473 N.E.2d 962; *People v. Petrovic* (1981), 102 Ill. App. 3d 282, 290, 430 N.E.2d 6, *appeal denied* (1982), 91 Ill. 2d 564; *People v. Foster* (1978), 66 Ill. App. 3d 292, 294, 383 N.E.2d 788.) *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470, does not suggest, as defendant argues, that all of these indicia of reliability need not be present.

The record in this case does not show that the alleged admission was made shortly after the crime, was made spontaneously or was made to a close, disinterested acquaintance. The offense occurred on April 23, 1983, and it was not until after defendant's first trial in September 1983, that Lloyd Greenley was listed in discovery as a defense witness; defendant's counsel advised the court only that it was at some time prior to the second trial held in December 1983 that Greenley advised him of the ownership of the gun. If the witness had earlier and separately told defendant the same, the record fails to show it. Alleged admissions made some time after the crime, or not spontaneously made but instead made in a calculated fashion, such as to a police officer investigating the offense, are not admissible under the exception. *People v. Petrovic* (1981), 102 Ill. App. 3d 282, 290, 430 N.E.2d 6, *appeal denied* (1982), 91 Ill. 2d 564; *People v. Foster* (1978), 66 Ill. App. 3d 292, 295, 383 N.E.2d 788.

Although defendant and Lloyd Greenley were friends, it is arguable that the requirement the admission be made to a close acquaintance was met in this case. It appears that a "confidant" is one without direct interest in the case, unlike a police officer, a defense investigator or a defendant's girlfriend, because testimony by a disinterested person is more likely to be reliable and less subject to inducement by defendant. (See *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1; *People v. Cunningham* (1984), 130 Ill. App. 3d 254, 473 N.E.2d 506; *People v. Foster* (1978), 66 Ill. App. 3d 292,

383 N.E.2d 788; *People v. Bolden* (1977), 53 Ill. App. 3d 848, 368 N.E.2d 1319, *appeal denied* (1978), 67 Ill. 2d 593.) Nor was the alleged admission corroborated. While defendant urges it was corroborated by Lloyd Greenley's presence in the bar next to defendant when the gun fell to the floor, mere presence at the scene provides no corroboration of an alleged admission of guilt. (*People v. Craven* (1973), 54 Ill. 2d 419, 421, 429, 299 N.E.2d 1; see *People v. Bonilla* (1983), 117 Ill. App. 3d 1041, 453 N.E.2d 1322.) Finally, because the witness had asserted his fifth amendment privilege against self-incrimination, he was unavailable for cross-examination. *People v. Cunningham* (1984), 130 Ill. App. 3d 254, 264-65, 473 N.E.2d 506.

We conclude that this hearsay evidence was not admissible as an admission against penal interest because at least three of the four requirements for its admission were not met.

■ Nor did the State open the door to its admission irrespective of its legal admissibility. In support of his argument, defendant cites *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44. In *Payne*, a robbery defendant's pretrial motion to suppress a gun found in a search of his home was successful; however, after defense counsel at trial elicited in cross-examination of the arresting officer that the residence had been searched, the State was allowed to have the gun identified by the robbery victim and admitted into evidence because defendant's cross-examination opened the door to its admission. Our supreme court affirmed, noting that was appropriate to rebut the false impression created by defendant's cross-examination that nothing which connected defendant to the crime had been recovered in the search. 98 Ill. 2d 45, 48-50.

Here, the prosecutor's cross-examination of defendant elicited only that defendant had talked with Lloyd Greenley, and others, about testifying for him. While possibly that opened the door to a defense explanation as to why Greenley did not testify for defendant (that he had invoked his privilege against self-incrimination), defendant sought not to reopen his case for that purpose, but to give inadmissible hearsay evidence of Greenley's alleged admission. In *Payne*, the false impression left with the jury required a rebuttal in the form of admission of a gun otherwise inadmissible. But here, defendant sought to go beyond the opening arguably created and to introduce evidence greater than needed to rebut any false impression before the jury that defendant did not call Greenley because his testimony would have been unfavorable. Fair rebuttal of such an impression did not require that defendant be allowed to give hearsay testimony of what Lloyd Greenley may have told him.

We thus conclude the trial court did not err in denying defendant's request to reopen his case. The testimony he sought to present was neither admissible nor required to rebut the State's cross-examination of him.

## III

### SENTENCE

■ Finally, we consider whether the extended term sentence of 7½ years was improper. Because defendant's commission of this offense occurred within five years of his release from prison, where he had been serving a sentence imposed for a 1978 conviction for aggravated battery, his conviction for possession of the gun was a Class 3 felony and not a misdemeanor. (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(b).) Defendant also had a 1974 conviction for burglary. The present sentence was imposed under section 5—5—3.2(b)(1) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(b)(1)), which authorizes an extended term where a defendant previously had been convicted within 10 years of the same or greater class of felony.

Defendant contends that the sentence must be vacated and the cause remanded for resentencing because at the sentencing hearing the State noted that an extended term could be predicated upon the prior aggravated battery conviction. Defendant argues that as that offense was used to enhance the present offense to a felony, the trial court might also have imposed the extended term on that basis and such would, he asserts, constitute a sentence flawed by improper double enhancement. Alternatively, defendant argues the sentence was an abuse of discretion.

The State responds that no double enhancement occurred here, as the trial court was aware of defendant's prior conviction for burglary within 10 years of the present offense, and it was that conviction which was the predicate for the extended term. Our review of the sentencing hearing leaves no doubt that the State is correct. When the prosecutor stated the aggravated battery conviction could also be used to impose an extended term, defense counsel raised a double-enhancement objection, and the prosecutor then advised the court it could avoid any problem by using the burglary conviction. It is clear from the colloquy between the court and the parties that it was the prior burglary conviction and not the aggravated battery conviction which was the basis of the extended term imposed in this case.

Defendant does not contend that the extended-term sentence would still be improper if, as we have found, it was predicated upon the burglary conviction. We conclude, however, that the sentence must be vacated because imposition of an extended term was erroneous regardless of which prior felony conviction was used as a predicate for it.

In *People v. Hobbs* (1981), 86 Ill. 2d 242, 427 N.E.2d 558, the supreme court held it was improper to impose an extended term, based on a defendant's prior conviction for felony theft in 1978, where the same conviction had been used to enhance the 1979 conviction at issue on appeal from misdemeanor theft to felony theft. In doing so, the court noted:

> "Since the 1979 *conduct itself* was not a felony it does not appear to fit within the legislative intent manifested by section 5—5—3.2(b). [Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b).] We consider that an extended term could have been imposed if the 1979 offense, exclusive of any other, had constituted a felony, and the earlier conviction had been of a felony at least as egregious." (Emphasis added.) "The logical interpretation of that language indicates an intent to severely punish a recidivist convicted of separate felonies within 10 years where the latest offense consisted of conduct which *itself* constituted a felony. Here, the 1979 conduct was a simple misdemeanor until the earlier conviction was added by allegation and proof, and these circumstances, in our judgment, are simply not those at which section 5—5—3.2(b) is aimed." (Emphasis in original.) (86 Ill. 2d 242, 245-46.)

It is true that in *Hobbs*, the same prior felony conviction was applied to first enhance a misdemeanor offense to a felony and then also to impose an extended term. However, *Hobbs* has also been applied to invalidate extended terms imposed where, as here, a misdemeanor was enhanced to a felony by use of one prior conviction and a separate prior felony conviction and a separate prior felony conviction was used as the predicate for imposition of an extended-term sentence for the enhanced offense.

In *People v. Spearman* (1982), 108 Ill. App. 3d 237, 438 N.E.2d 1320, *appeal denied* (1982), 92 Ill. 2d 571, the court considered the above language from *Hobbs* that a defendant, whose present misdemeanor retail theft conviction was enhanced to a felony because of a prior misdemeanor retail theft, could not be sentenced to an extended term despite other felony convictions of attempted burglary and two burglaries. (108 Ill. App. 3d 237, 239-40.) The court in

*Spearman* concluded that *Hobbs* dictates that if the criminal conduct at issue, exclusive of any enhancement provision, constitutes only a misdemeanor, then no extended term may be imposed. (108 Ill. App. 3d 237, 240.) This application of *Hobbs*, was also followed in *People v. Grayson* (1983), 119 Ill. App. 3d 252, 456 N.E.2d 664. We agree that *Hobbs* precludes an extended term in a situation such as exists here and conclude defendant must be resentenced. See *People v. Del Percio* (1985), 105 Ill. 2d 372, 475 N.E.2d 528.

Accordingly, the judgment of conviction is affirmed, the sentence vacated, and this cause remanded to the circuit court of Kane County for resentencing.

Judgment affirmed; sentence vacated and remanded for resentencing.

LINDBERG and UNVERZAGT, JJ., concur.