THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JEREMIAH POWELL, Defendant-Appellant.

Second District   No. 84—0913

Opinion filed December 30, 1985.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Charles M. Schiedel and Beth Katz, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko, Sally A. Swiss, and Virginia Ashley, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE NASH delivered the opinion of the court:

Following a jury trial, defendant, Jeremiah Powell was convicted of aggravated battery to a child (Ill. Rev. Stat. 1983, ch. 38, par. 12—4.3) and sentenced to an extended term of 14 years' imprisonment. He appeals, contending that the trial court erred: (1) in refusing to appoint counsel other than the public defender; (2) in ruling that his 11-year-old conviction for deviate sexual assault was admissible for impeachment purposes; (3) in excluding hearsay statements falling within the exception for declarations against penal interest; and (4) in imposing an extended term based upon the victim's age and the disparity between the victim's and defendant's sizes.

At defendant's trial, Betty Sue Hersman testified that on May 29, 1984, she was living in an apartment in North Chicago with her four-year-old daughter Ruth Ann, infant son Tyrone and the defendant, who had lived there for approximately two months. She telephoned defendant at work about 9 p.m. that evening to tell him that she had to leave for work and asked him what she should do with the children. Defendant told her to leave them at home because he would be

home shortly. Hersman left for work at 10:40 p.m. after telling the landlord, who lived on the first floor, that the children would be alone until defendant came home.

Willie Bacon, the landlord, testified that when he returned from work about 12:45 a.m. he heard water running in the Hersman apartment, and so he let himself into the apartment and turned off the water. He saw no one in the apartment because no lights were on. Between 2 and 3 a.m., Bacon heard a noise as if someone was throwing a ball or something else against the wall. He also heard a female child crying loudly and a man, whose voice he identified as defendant's, yelling. The child screamed for approximately 30 minutes.

Four-year-old Ruth Ann Hersman testified that defendant cut her left cheek with a six-inch-long kitchen knife, and also hit her in the head, eyes and back with his fist and a belt. She eventually went to sleep and was taken to the hospital the next day. Ruth Ann testified that she was not afraid of the defendant the following morning or at the time of trial.

Betty Hersman further testified that when she returned home from work about 7:30 a.m., defendant and the children were asleep. She first noticed that Ruth Ann had been "beat up" when she checked the children about 12:20 p.m. Hersman observed bruises on Ruth Ann's face, chest, abdomen and back, two black eyes, and a cut on her upper jaw. Hersman questioned the defendant, who said that he did not know what had happened to Ruth Ann. When she was questioned, Ruth Ann named her baby brother Tyrone, the family dog, and the defendant as being responsible. Hersman also asked the landlord if he knew anything, and he told her he heard a noise and a voice that sounded like defendant's.

Hersman stated that she took Ruth Ann to the home of Ollie Love, defendant's sister, where Ruth Ann blamed about a dozen people for her injuries; according to Hersman, Ruth Ann told "stories" at times. Hersman further testified that she was primarily responsible for disciplining her children and that she never knew defendant to strike or discipline them.

Ollie Love testified that when she saw Ruth Ann she noticed bruises on Ruth Ann's face and a band-aid on her cheek. Hersman and defendant told Love they did not know what happened to Ruth Ann. Love asked Ruth Ann who had done it, to which Ruth Ann responded Junior (Love's nephew), Junior's mother Marie, the floor, Maurice and defendant.

Dr. William Helvey examined and treated Ruth Ann in the emergency room. He testified that the cut on Ruth Ann's cheek was about

2½, inches long, down to the bone and required 20 stitches to close. In his opinion, Ruth Ann's injuries were the result of a beating.

Defendant first contends that he was denied effective assistance of counsel in that the court refused to appoint counsel other than the public defender. In a hearing for appointment of counsel, defendant told the judge that he had experienced problems with the public defender's office in the past, having taken them to court once, and that the court had always appointed private counsel for him. The court refused defendant's request for private counsel, indicating that defendant had not given any reason for the appointment of counsel other than the public defender.

■ The right to effective assistance of counsel entitles the person represented to the undivided loyalty of counsel (*Glasser v. United States* (1942), 315 U.S. 60, 69-71, 86 L. Ed. 680, 698-700, 62 S. Ct. 457, 464-65; *People v. Ash* (1984), 102 Ill. 2d 485, 495, 468 N.E.2d 1153), and prohibits an attorney from representing conflicting interests or undertaking the discharge of inconsistent obligations. (*People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393; *People v. Owens* (1979), 69 Ill. App. 3d 599, 601, 388 N.E.2d 170.) A conviction will be reversed without a showing of actual prejudice where counsel's conflict of interest arose from or involved a commitment to others (*People v. Lewis* (1981), 88 Ill. 2d 429, 436, 430 N.E.2d 994, *cert. denied* (1983), 460 U.S. 1053, 75 L. Ed. 2d 932, 103 S. Ct. 1501; *People v. Stoval* (1968), 40 Ill. 2d 109, 113, 239 N.E.2d 441), but not where the conflict arose in another fashion. *People v. Gardner* (1977), 47 Ill. App. 3d 529, 533, 362 N.E.2d 14; *People v. Fuller* (1974), 21 Ill. App. 3d 437, 442, 315 N.E.2d 687, *appeal denied* (1974), 57 Ill. 2d 605.

■ Defendant urges that we apply the *per se* reversal rule here because defendant once sued the public defender's office; however, it is not apparent that the claimed conflict of interest in the present case is the type which mandates reversal. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 533, 362 N.E.2d 14.) In *Gardner*, the court declined to reverse where the alleged conflict of interest arose from defendant's dissatisfaction with appointed counsel's representation of the defendant in an unrelated civil suit, reasoning that the alleged conflict did not arise from or involve a commitment to others. (47 Ill. App. 3d 529, 533, 362 N.E.2d 14.) In the present case, defendant merely expressed a general disinclination toward appointment of a public defender and, although given an opportunity to inform the court of the factual basis for a conflict of interest, did not do so. Here, there was no indication that defendant's dispute with the public defender's office involved the representation of another party or that

it related to the present charges. The judge was not compelled to appoint private counsel simply because it had been the custom to do so in defendant's case. Defendant has not shown the existence of the type of conflict which would permit reversal without a showing of prejudice.

An indigent defendant is not entitled to counsel of his choice (*People v. Lewis* (1981), 88 Ill. 2d 429, 444, 430 N.E.2d 994; *People v. Cox* (1961), 22 Ill. 2d 534, 537, 177 N.E.2d 211, *cert. denied* (1963), 374 U.S. 855, 10 L. Ed. 2d 1076, 83 S. Ct. 1925), and the court may, in its discretion, appoint counsel other than the public defender only after a showing of good cause. (Ill. Rev. Stat. 1983, ch. 34, par. 5604; *People v. Gardner* (1977), 47 Ill. App. 3d 529, 535, 362 N.E.2d 14.) As we have already observed, defendant gave the court no good reason why the public defender should not be appointed to represent him. Moreover, the public defender's office is not considered as an individual unit or entity, and neither personal allegiance or loyalty to the public defender's office requires that if one attorney employed by such an officer were disqualified by reason of a conflict of interest, no other attorney employed by that office could undertake the representation. (*People v. Miller* (1980), 79 Ill. 2d 454, 461, 404 N.E.2d 199; *People v. Tiller* (1984), 130 Ill. App. 3d 549, 553, 474 N.E.2d 756.) Our inquiry must proceed on a case-by-case basis, focusing on the individual attorney's obligations and the interests he is called upon to represent. (See *People v. Miller* (1980), 79 Ill. 2d 454, 462, 404 N.E.2d 199.) We will not require the judge to speculate why defendant sued the public defender, nor guess which attorney previously represented defendant. Defendant did not direct his objection to the appointment of any particular assistant public defender and did not renew his objection at any time after counsel was appointed. Under these circumstances, the trial judge did not abuse his discretion in refusing to appoint counsel other than the public defender to represent the defendant.

Next, defendant contends that the court abused its discretion in ruling that his 11-year-old conviction for deviate sexual assault was admissible for impeachment purposes. The record discloses that in June 1973, defendant was convicted of robbery and sentenced to a term of 5 to 15 years' imprisonment; then, in September 1973, he was convicted of deviate sexual assault and sentenced to a term of 30 to 90 years' imprisonment, which he served concurrently with the sentence for robbery. Defendant was paroled on August 23, 1983, and the present offense occurred May 29, 1984. The court ruled, on defendant's motion *in limine*, that the prosecution could use only the convic-

tion for deviate sexual assault to impeach defendant's testimony. Defendant did not testify in the subsequent trial.

■■ ■ The use of a prior conviction for impeachment purposes is governed by the rule set forth by the supreme court in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, which provides that a prior conviction may be used for impeachment if (1) it was punishable by imprisonment in excess of one year or involved dishonesty, and (2) if either the conviction or release from confinement occurred within the preceding 10 years. Once the first two prerequisites are met, the court must then balance the prejudicial effect of the prior conviction against its probative value. As a guide to the balancing process, the supreme court suggested that the following factors be considered: (1) nature of the prior crime; (2) nearness or remoteness of the crime; (3) defendant's subsequent career; (4) length of the defendant's criminal record; (5) the defendant's age; (6) whether the prior crime was similar to the one charged; (7) the likelihood defendant would not testify if the conviction were not excluded. 47 Ill. 2d 510, 518-19, 268 N.E.2d 695.

In the present case, defendant had been convicted of a felony which carried a possible penalty in excess of one year, and he was tried for the present offense one year from the date of his release from confinement; therefore, it is apparent that the disputed conviction was within the 10-year limitation. These requirements having been met, the issue is whether the court abused its discretion in balancing the prejudicial effect of the evidence against its probative value.

■ Defendant argues that evidence of his conviction for deviate sexual assault was not at all probative of his credibility, relying on *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, *appeal denied* (1977), 66 Ill. 2d 641. This court has rejected the reasoning of the court in *Wright*, and in *People v. Saunders* (1984), 122 Ill. App. 3d 922, 938, 461 N.E.2d 1006, we stated that a serious felony conviction evinces a disrespect for societal order and thus adversely affects the defendant's veracity. (See also *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 298, 376 N.E.2d 425; *People v. Evans* (1981), 92 Ill. App. 3d 874, 877, 416 N.E.2d 377.) Deviate sexual assault was a Class 1 felony under the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 11—3 (repealed 1984)); thus, a veracity-related crime, and a conviction thereof is probative of defendant's credibility.

■ We also disagree with defendant's argument that the remoteness of the conviction, 11 years from the date of conviction, barred its admission. While defendant was convicted in 1973, he was not re-

leased until August 1983, and, as noted by the court in *Montgomery*, the later date is to be used to determine the recency of the conviction. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 518-19, 268 N.E.2d 695.) Although defendant states that he "spent the preceding 10 years without incident," that fact is not relevant since defendant was incarcerated during this time. Since only one year had elapsed since defendant's release from confinement and he was still on parole when he committed the present offense, evidence of the prior conviction was not too remote to be admissible under *Montgomery*.

■■ The supreme court in *Montgomery* has given the trial court considerable latitude in determining whether a prior conviction may be disclosed for impeachment purposes. (*People v. Testa* (1984), 125 Ill. App. 3d 1039, 1046, 466 N.E.2d 1126; *People v. Evans* (1981), 92 Ill. App. 3d 874, 878, 416 N.E.2d 377.) The burden of demonstrating that the prejudicial effect of such evidence substantially outweighs its probative value falls to the party seeking exclusion (*People v. Medreno* (1981), 99 Ill. App. 3d 449, 451, 425 N.E.2d 588), and defendant has not shown that the trial judge abused his discretion in this regard. The record shows that the judge carefully balanced the factors bearing on admissibility and, in fact, he excluded evidence of defendant's prior conviction. Although defendant contends that the court's ruling chilled his exercise of the right to testify, his failure to testify does not establish that he was prejudiced. *People v. Bryant* (1983), 94 Ill. 2d 514, 524, 447 N.E.2d 301; *People v. Ganter* (1977), 56 Ill. App. 3d 316, 327, 371 N.E.2d 1072, *appeal denied* (1978), 71 Ill. 2d 604.

Defendant also contends that the trial court erred in excluding testimony tending to show that another person committed the crime. Defendant sought to call as a witness Betty Sue Hersman, who would testify that "Dwayne," a man related to Hersman's former boyfriend, who was deceased, approached her soon after the offense and stated, "Did you think we were going to let my cousin's death slide by? I know your baby is in the hospital with two black eyes and a cut on her face. If you want to, you can go to the police." In response to the State's objection that the testimony was hearsay, defense counsel argued that the statements were not being offered for the truth of the matters asserted and, therefore, were not hearsay.

■■ On appeal, defendant argues that the statements were hearsay but that they fell within the exception for declarations against penal interest. However, an objection to evidence on a specific ground at trial waives any objection to that evidence on other grounds on appeal. (*People v. Canaday* (1971), 49 Ill. 2d 416, 423-24, 275 N.E.2d 356; *People v. Kinion* (1982), 105 Ill. App. 3d 1069, 1076, 435 N.E.2d

533, *cert. denied* (1983), 460 U.S. 1014, 75 L. Ed. 2d 484, 103 S. Ct. 1256.) Defendant has, therefore, waived his contention that the evidence was admissible under the declarations against penal interest exception to the hearsay rule.

■■■ In any event, it is clear that the testimony would have been barred as not meeting the criteria for admission under this exception. For such evidence to be admissible, four indicia of reliability must be satisfied: (1) the hearsay statement was made spontaneously shortly after the crime to a close acquaintance; (2) the statement was corroborated by other evidence; (3) the statement was self incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (*People v. Tate* (1981), 87 Ill. 2d 134, 143-44, 429 N.E.2d 470; *People v. Nally* (1985), 134 Ill. App. 3d 865, 871, 480 N.E.2d 1373.) All four conditions must be met or the evidence is inadmissible. (*People v. Bowel* (1985), 129 Ill. App. 3d 940, 944, 473 N.E.2d 962; *People v. Petrovic* (1981), 102 Ill. App. 3d 282, 290, 430 N.E.2d 6, *appeal denied* (1982), 91 Ill. 2d 564.) The record in the present case does not show the statement was made spontaneously to a disinterested acquaintance, or that there was an opportunity to cross-examine the declarant. The declarant was identified no further than "Dwayne," and it was not established whether he even existed; no effort is shown in the record as having been made by defendant to call the declarant as a witness or have him subpoenaed. Even if defendant had offered the testimony as a declaration against penal interest, it would not have been admissible on this ground.

■■■ Defendant's last contention is that the victim's age and the disparity in size between the victim and defendant were improper factors considered by the court in imposing an extended term of imprisonment upon the conviction for aggravated battery to a child. Defendant relies on the rule set forth in *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, that the court cannot enhance the sentence imposed by considering factors which are themselves inherent in that offense.

The trial court imposed an extended term in this case based upon the following factors: (1) defendant was at least 17 years of age when the offense was committed; (2) he was convicted of a second felony within 10 years; (3) the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; and (4) the victim was under 12 years of age. The court elaborated on the third factor, stating:

> "The Court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty,

considering the injuries to the child, and the age and size of the defendant in relationship to the child. The Court finds it is exceptionally brutal and heinous."

In sentencing defendant for aggravated battery to a child, the court could not generally enhance the sentence because the victim was a child under 13 years of age, since that factor is an element of the offense (Ill. Rev. Stat. 1983, ch. 38, par. 12—4.3); however, the court could properly consider whether, in addition to being under 13 years of age, the victim was particularly young and helpless. In the present case this fact merely supported the court's finding that the offense was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. In evaluating the brutality and heinousness of an offense, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated (*People v. Devine* (1981), 98 Ill. App. 3d 914, 925, 424 N.E.2d 823, *cert. denied* (1982), 458 U.S. 1109, 73 L. Ed. 2d 1371, 102 S. Ct. 3490), including the victim's age (*People v. Brewer* (1984), 127 Ill. App. 3d 306, 311-12, 468 N.E.2d 1242, *appeal denied* (1985), 101 Ill. 2d 590), or helplessness. (*People v. Strait* (1983), 116 Ill. App. 3d 110, 115, 451 N.E.2d 631, *appeal denied* (1983), 96 Ill. 2d 548; *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 1114, 435 N.E.2d 706, *appeal denied* (1982), 91 Ill. 2d 572; *People v. Burton* (1981), 102 Ill. App. 3d 148, 154, 429 N.E.2d 543.) Moreover, the judge in the present case had an opportunity to observe the defendant and the victim and could properly take into account the significant disparity in size and strength between them as a measure of the gravity of the offense. (*People v. Brewer* (1984), 127 Ill. App. 3d 306, 312, 468 N.E.2d 1242, *appeal denied* (1985), 101 Ill. 2d 590.) These factors are not elements of the offense of aggravated battery to a child, and consequently, we do not consider that *Conover* barred the judge from taking them into account in imposing an extended term in this case.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.